## Mulvihill, Appellant, *v.* Bullers.

*Contract—Agreement—Banks and banking—Impaired capital—Evidence.*

After the federal authorities had notified a national bank that its capital was impaired, and that certain of its securities should be charged off, three persons interested in the bank agreed to advance the sum necessary to make good the capital. Thereupon certain of the stockholders agreed in writing to pay in cash, on demand, thirty per cent of the par value of the stock of the bank held by each, or any proportional part thereof that might be required to reimburse the parties who made the advance. The agreement further stated: "It is understood that the securities charged are to be applied first to repayment of the money advanced to lift said securities, and then to be divided pro rata among those who pay under the agreement." Some years later the three parties who had made the advances sued one of the stockholders under the agreement. In their statement of claim they did not set out the holdings of stock of the other parties in the agreement, or that the

securities were worthless. They averred, however, that they had made faithful efforts to collect the securities, but denied that there was any obligation upon them to collect and realize on the securities. The affidavit of defense denied liability until proof should have been made of the amount realized on the securities, or that they were worthless. At the trial no proof was offered as to the holding of the other parties to the agreement, or that any effort had been made to collect the securities, or that the securities were in fact worthless. *Held*, that a nonsuit was properly entered.

Argued April 21, 1914. Appeal, No. 76, April T., 1914, by plaintiffs, from order of C. P. Westmoreland Co., May Term, 1912, No. 412, refusing to take off compulsory nonsuit in case of James P. Mulvihill, D. B. Doty and H. Burns Smith for use of First National Bank of Mifflintown v. Joseph Bullers. Before RICE, P. J., HEAD, PORTER, HENDERSON, KEPHART and TREXLER, JJ. Affirmed.

Assumpsit on an agreement in writing. Before McCONNELL, J.

The facts are stated in the opinion of the Superior Court.

At the trial the court entered a compulsory nonsuit which it subsequently refused to take off.

*Error assigned* was refusal to take off nonsuit.

*William A. Griffith*, of *Griffith & Mitchell*, for appellant.—The court below treats legal plaintiffs as holding the securities as collateral and imposes upon them the duty · of exhausting them before calling upon dedendant to pay.

A pledgee of stock is not bound to sell the same without authority and instructions to do so from the pledgor, although the loan be not paid at maturity: O'Neil v. Whigham, 87 Pa. 394; Stuart v. Bigler, 98 Pa. 80; Granite Bank v. Richardson, 7 Met. (Mass.) 407; Rice v. Catlin, 14 Pick. (Mass.) 221.

*Robert W. Smith*, with him *Jas. S. Moorhead*, for appellee, cited: Hunt v. Todd, 18 Pa. 316.

OPINION BY RICE, P. J., October 12, 1914:

About April 1, 1907, the First National Bank of New Kensington, Pa., was notified by the federal authorities that certain notes and securities, placed with it by borrowers and debtors for moneys owing by them to the bank, must be collected at once and charged off the books of the bank as assets thereof; that the capital was impaired, and that unless the cash was collected or paid promptly to the bank an assessment of thirty per cent upon the capital stock would be made by the comptroller and collected from the stockholders to restore the capital of the bank and take the place of the securities to be charged off. In order to restore the impaired capital of the bank, and thus avoid an assessment, a plan was devised whereby Mulvihill and Doty, stockholders, and Smith, the bookkeeper, who are the legal plaintiffs in this action, should advance $15,000 to the bank and should be reimbursed in a certain way. The parties to this plan were the persons above named and eight other stockholders, one of whom is the defendant in the action. The nature of the plan is in part indicated, and the several obligations of the stockholders who were parties to it are defined, by a paper which these ten stockholders signed and which reads as follows:

"Hereby waiving notice of assessment levied by the comptroller of the currency for impairment of the capital stock of the First Natl. Bank, New Kensington, Pa., I hereby agree to pay in cash, on demand, 30% of the par value of the stock in said bank held by me, or any proportionate part thereof that may be required to reimburse D. B. Doty, H. Burns Smith and Jas. P. Mulvihill, parties for advancing $15,000, or any portion thereof, with interest in order to make good the said assessment. It is understood that the securities charged are to be applied first to the repayment of the money advanced to lift said securities and then to be divided pro rata among those who pay under the agreement."

The legal plaintiffs advanced to the bank the $15,000,

and received from the bank in return the condemned securities, amounting on their face to $29,421.44.

Five years later, the use plaintiff, to which Mulvihill, Doty, and Smith had assigned as collateral security all their right, title, and interest in what they correctly described as the above "agreement to reimburse," brought this action of assumpsit, and in its statement claimed to recover $600, this being thirty per cent of the par value of twenty shares of stock held by the defendant.

After referring to what had been done toward the collection of certain of the securities, the sixth paragraph of the statement of claim alleged, as to the others, that the legal plaintiffs "have made faithful efforts to collect said securities and apply the proceeds thereof to the repayment of the said sum of $15,000 furnished and paid by them to said First National Bank of New Kensington, Pa., as aforesaid, but without success." In the part of the affidavit of defense pertinent to this allegation, the defendant denied liability under the agreement "until due proof shall have been made of the amount realized on the said securities, or that said securities still uncollected are worthless—there being no averment in the said statement of claim that such is the fact." A replication was filed by the plaintiff, in which, speaking of this paragraph of the affidavit of defense, it was averred "as matter of law" that under and by virtue of the terms of the contract there was no obligation resting on either the legal or equitable plaintiffs to collect and realize upon said securities or prove them to be worthless before calling upon the defendant and the other signers of the agreement to pay the several sums agreed to be paid by them. The pertinency of this detailed reference to the pleadings will appear later when we come to discuss the second assignment of error. With the issue in this shape the case went to trial. It is before us by the plaintiff's appeal from the refusal to take off the compulsory

nonsuit that was entered at the conclusion of the plaintiff's evidence.

1. It would only becloud the case to refer to the consideration for the assignment to the use plaintiff; it is sufficient to say that its right rises no higher than that of the legal plaintiffs. The case turns on the construction of the agreement. What was the obligation which the defendant assumed thereby? It is argued by plaintiff's counsel that the promise to pay on demand shows distinctly that those who signed contemplated that, when the promisees, who had advanced the $15,000 for the common benefit, decided that the time for payment had come, and demanded payment, it would be made by those owing, to the extent agreed upon; that is, that each would pay the full thirty per cent of the par value of his capital stock. But this construction fails to give due weight to the qualifying words: "or any proportionate part thereof" (that is, of the thirty per cent) "that may be required to reimburse" Mulvihill, Doty and Smith. This proportionate part would depend, in the first place, on the amount that thirty per cent of all the capital stock held by the solvent signers of the agreement would produce. Upon this subject the evidence is silent. It simply shows that the defendant owns twenty shares; but the shares held by the other signers is not shown. The nonsuit could be sustained upon this ground alone.

2. It is to be observed further, that the securities charged off the books of the bank were, by the agreement, "to be applied first to the repayment of the money advanced to lift said securities." By whom they were to be applied is not expressly stated in the contract. But when it is remembered that they were delivered by the bank, not to the signing stockholders collectively, but to the three legal plaintiffs who advanced the $15,000 (in return for the sum advanced, as alleged in the statement of claim), there is little room for doubt that the parties contemplated that the exclusive title to, and dominion over, the securities they

thus acquired carried with them not only the power but the duty to apply them, so far as they were adequate and necessary, to the reimbursing of themselves. As the learned trial judge well says: "Although, presumably, the trustees would get from the bank an unrestricted dominion over the securities so received, yet, in this agreement with the defendant and others, the trustees dedicate those securities, over which they had unrestricted dominion, to a particular use, and that use was to be the same use as that for which the indemnity was sought to be given in the agreement. The whole function of this agreement is to furnish the trustees with an executory indemnity against loss on account of their part in the proposed bank transaction, and all that is inserted therein is so inserted, either for the purpose of pledging such indemnity, or for limiting the extent to which it is intended it shall operate." Again, he says: "There can be no question, from an inspection of this agreement, and from a consideration of all the circumstances attending its making, that the defendant, and others situated as he was, obligated themselves to the three persons named by a contract of indemnity." Further on in his learned and exhaustive opinion he says: "This agreement is not a note which the defendant, by subscribing it, has promised, absolutely to pay to these three persons on demand; it is not a contract of guaranty or suretyship for the protection of them against default in some debtor who owes them a particular debt or duty, but it is a promise of indemnity against loss in an undertaking they are about to enter upon of securing the right of the bank to continue in business by supplementing its capital stock by paying over $15,000, and, in exchange, taking over $29,421.44 of the bank's securities, out of which they are to realize reimbursement for their advance, if possible. Should they, acting diligently and in good faith, fall short of realizing the desired end, this agreement embodies an indemnity to secure them against loss there-

from, in so far as what is promised therein will go in that respect." It logically follows from this view of the contract, in which we concur, first, that, in order to ascertain the proportionate part of thirty per cent of the par value of the shares of stock held by the signers of the agreement that is "required to reimburse" the legal plaintiffs, it is necessary to know to what extent the available proceeds of the securities taken and retained by them fell short of reimbursing them; and, secondly, that the burden of proving this essential fact rested on the plaintiff. The plaintiff must recover, if at all, upon the contract, and, as the learned court said in conclusion, to allow a recovery without a showing that what was already in the hands of the legal plaintiffs, which they had agreed to apply to the reimbursing of themselves for their advancement, was inadequate for that purpose, and why it was inadequate, would be an unjustifiable rescission of the contract. As the case stood when the plaintiffs rested, there was no evidence of this essential fact, and therefore there was no error in granting a compulsory nonsuit.

3. But a rule of the court below provides that averments of fact which are set forth in the statement of claim, and are not denied by proper pleading verified by affidavit, shall be deemed competent evidence of the fact so alleged, without further proof than the offer of such averment in evidence. It is argued that the court erred in rejecting the plaintiff's offer recited in the second assignment of error, and that, if the offer had been admitted, a prima facie case would have been made out. We cannot assent to this view. The offer was not to prove that the legal plaintiffs had made "proper and diligent" efforts to realize upon the securities by showing what the efforts were, but to prove performance of this condition precedent by the undenied allegations of the statement of claim. But the statement of claim did not set forth that the securities were worthless, nor allege specifically the nature of the efforts the plaintiff

had made to collect or convert them, nor allege generally that they had made proper and diligent efforts to obtain reimbursement out of them. And it is to be observed the affidavit of defense gave notice that proof would be required upon this essential feature of the plaintiff's case. The vague and indefinite averment that the plaintiffs had made "faithful" efforts, especially when considered in connection with the averment of the replication that they were under no obligation to make any efforts, was not the equivalent of an averment that they were unable to obtain reimbursement out of the securities by the exercise of reasonable diligence. In short, the offer was properly rejected because it was not, either in form or substance, sustained by the allegation of the statement of claim. Moreover, the allegation of the sixth paragraph of the statement of claim did not, without more, meet the burden of proof that rested on the plaintiff.

The assignments of error are overruled and the judgment is affirmed.